IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY N., KAREN M., JACK S., HEGHINE MURADYAN, and DAYANA VERA DE APONTE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CITIZENSHIP & IMMIGRATION SERVICES, et al.,<br><br>Defendants. | Case No. 21-cv-08742-MMC<br><br>**ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND FOR CLASS CERTIFICATION** |

Before the Court are two motions: (1) plaintiffs' "Motion for Preliminary Injunction and Provisional Class Certification," filed November 11, 2021; and (2) plaintiffs' "Motion for Class Certification," filed November 11, 2021. The matters came on regularly for hearing December 17, 2021. Emma Winger and Katherine Melloy Goettel of the American Immigration Council and Zachary Manfredi of the Asylum Seeker Advocacy Project appeared on behalf of plaintiffs. Kevin Hirst and Sergio Sarkany of the United States Department of Justice appeared on behalf of defendants. Having read and considered the parties' respective written submissions, and having considered the parties' respective oral arguments, the Court rules as follows.

**BACKGROUND**

On November 10, 2021, plaintiffs, five individuals who have applied for asylum, filed their Complaint in the above-titled action, in which they allege the following events have occurred. Each plaintiff has received an Employment Authorization Document ("EAD") from United States Citizenship & Immigration Services ("USCIS"), allowing such

plaintiff, during the pendency of his/her asylum application, to work for a period of two years, and has applied for renewal of his/her EAD before the expiration date. As discussed in greater detail below, each plaintiff has received from USCIS a 180-day extension of the expiration date of his/her EAD, and, as of November 10, 2021, the date on which plaintiffs filed the above-titled action, none of the plaintiffs' respective applications for renewal had been granted, with four of the five plaintiffs' 180-day extension periods having expired before the instant action was filed and the remaining plaintiff's 180-day extension expiring shortly after such filing. Plaintiffs further allege they "will suffer or have suffered irreparable harm" from the failure to adjudicate their respective applications for renewal. (See Compl. at 23:18.)

Based on the above allegations, plaintiffs, on their own behalf and on behalf of a putative class, assert two causes of action. In Count One, plaintiffs seek relief under the Mandamus Act, 28 U.S.C. § 1361, under a theory that USCIS has a "ministerial, nondiscretionary duty to adjudicate the applications of asylum applicants to renew their EADs within the 180-day automatic extension period." (See Compl. ¶ 116.) In Count Two, plaintiffs seek relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-06, under a theory that USCIS's "failure to adjudicate the petitions" within the 180-day extension period "constitutes an unreasonable delay." (See Compl. ¶ 123.) As to both causes of action, plaintiffs seek a declaration that USCIS's "delayed adjudication of [p]laintiffs' and class members' applications to renew their EADs [is] unreasonable" and an order compelling USCIS to "adjudicate [p]laintiffs' and class members' applications to renew their EADs within the 180-day automatic extension period." (See Compl., Request for Relief ¶¶ 4, 5.)

**DISCUSSION**

As noted, plaintiffs have applied for asylum and seek permission to continue to work during the pendency of their asylum applications.

**A. Applicable Regulations**

Pursuant to 8 U.S.C. § 1158, "[a]n applicant for asylum is not entitled to

employment authorization, but such authorization may be provided under regulation by the Attorney General." See 8 U.S.C. § 1158(d)(2).

The Department of Homeland Security has promulgated regulations addressing the circumstances under which aliens applying for asylum may seek employment authorization. In particular, although "an applicant for asylum who is in the United States may apply for employment authorization," see 8 C.F.R. § 208.7(a)(1)(i), such applicant "cannot apply for initial employment authorization earlier than 365 calendar days after the date USCIS or the immigration court receives the asylum application," see 8 C.F.R. § 208.7(a)(1)(ii). Following the expiration of the 365-day period, such applicant "must request employment authorization on the form and in the manner prescribed by USCIS and according to the form instructions, and must submit biometrics at a scheduled biometrics services appointment," see 8 C.F.R. § 208.7(a)(1)(i), after which "USCIS may grant initial employment authorization . . . for a period that USCIS determines is appropriate at its discretion, not to exceed increments of two years," see id.

USCIS may also "renew employment authorization . . . in increments determined by USCIS in its discretion, but not to exceed increments of two years." See 8 C.F.R. § 208.7(b)(1). An applicant for renewal "must request employment authorization on the form and in the manner prescribed by USCIS and according to the form instructions" and must "establish that he or she has continued to pursue an asylum application before USCIS, an immigration judge, or the Board of Immigration Appeals," as well as "that he or she continues to meet the eligibility criteria for employment authorization." See id.

"[T]he validity period of an expiring [EAD] . . . will be automatically extended for an additional period not to exceed 180 days from the date of such document's and such employment authorization's expiration," provided that the request for renewal is "properly filed . . . before the expiration date," is "[b]ased on the same employment authorization category as shown on the face of the expiring [EAD]," and is "[b]ased on a class of aliens whose eligibility to apply for employment authorization continues notwithstanding expiration of the [EAD] and is based on an employment authorization category that does

not require adjudication of an underlying application or petition before adjudication of the renewal application."  See 8 C.F.R. § 274a.13(d)(1).

**B. Plaintiffs' Motions**

As noted, plaintiffs seek a preliminary injunction and an order certifying a class.

**1. Preliminary Injunction**

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008).

Here, plaintiffs seek issuance of a preliminary injunction requiring USCIS to adjudicate renewal applications within the above-referenced 180-day extension period, and, with regard to applicants whose 180-day extension periods have expired, to adjudicate the applications within fourteen days of issuance of an order granting the preliminary injunction.

At the outset, the Court notes that the renewal applications of three of the five named plaintiffs, specifically, Tony N., Jack S., and Heghine Muradyan, were adjudicated prior to the December 17, 2021, hearing.  (See Nolan Decl., filed December 6, 2021, ¶ 25(a), ¶ 25(d); Pls.' Reply in Support of Mot. for Prelim. Inj., filed December 10, 2021, at 3:25-26.)  Accordingly, to the extent the motion for preliminary injunction is brought on behalf of those three plaintiffs, the motion will be denied as moot, in that they have obtained the relief sought, see Ray v. Cuccinelli, 2020 WL 6462398, at *4 (N.D. Cal. November 3, 2020) (finding motion for preliminary injunction seeking extension of EAD was "moot" as to plaintiffs "whose work authorizations [had] been adjudicated"), and, given that their newly-issued EADs will remain valid for a period of thirty months, have not shown their claims qualify for the "capable of repetition, yet evading review" exception to mootness, see Biodiversity Legal Foundation v. Badgley, 309 F.3d 1166, 1173 (9th Cir. 2022) (requiring showing, inter alia, "there is a reasonable expectation that the plaintiffs

will be subjected to [the challenged conduct] again") (internal quotation and citation omitted).

The renewal applications of plaintiffs Karen M. and Dayana Vera de Aponte, however, remain pending. Accordingly, the Court next turns to the merits of the motion for a preliminary injunction, as brought on their behalf, and, in particular, whether plaintiffs have made the requisite showing as to the above-listed four elements.

**a. Likelihood of Success on the Merits**

As plaintiffs seek an order compelling USCIS to adjudicate their renewal applications within 180 days, i.e., a specified time period not otherwise required by a statute or regulation,[1] such proposed injunctive relief is mandatory in nature, see Marlyn Nutraceuticals Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) (holding "[a] mandatory injunction orders a responsible party to take action"; internal quotation and citation omitted), and, consequently, plaintiffs must show a "clear likelihood of success on the merits," see Stanley v. University of Southern California, 13 F.3d 1313, 1316 (9th Cir. 1994).

In that regard, the parties agree that the factors identified in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) (hereinafter, "TRAC"), govern, where, as here, a plaintiff seeks relief based on an allegation that the government has unreasonably delayed issuing a decision. See id. at 79-80 (identifying factors to be considered in determining "claims of unreasonable agency delay"); Biodiversity Legal Foundation, 309 F.3d at 1177 n.11 (holding TRAC factors are to be considered where plaintiff alleges unreasonable delay on part of government and there is "an absence of a firm deadline").

As set forth in TRAC, those factors are as follows: "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided

---

[1] At the hearing, plaintiffs acknowledged that no statute or regulation requires USCIS to rule on a renewal application within a particular timeframe.

a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." See TRAC, 750 F.2d at 80 (internal quotations and citations omitted).

### (1) First Factor: Rule of Reason

Under the first TRAC factor, the "rule of reason," courts "consider whether the time for agency action has been reasonable," see In re Natural Resources Defense Council, Inc., 956 F.3d 1134, 1139 (9th Cir. 2020), taking into account the "length of the delay" and the "reasons for delay," see Poursohi v. Blinken, 2021 WL 5331446, at *5-6 (N.D. Cal. November 16, 2021)

Here, as to both Karen M. and Dayana Vera de Aponte, the period of delay is relatively short, specifically, slightly over one month. Plaintiffs argue, however, that it is reasonable to require USCIS to rule on a renewal application within the 180-day extension period, and that any delay beyond that period is unreasonable.

In support thereof, plaintiffs rely on the Department of Homeland Security's ("DHS") November 2016 amendment of 8 C.F.R. § 274a.13, by which amendment it eliminated a requirement that USCIS rule on EAD applications within ninety days of receipt and added the above-described provision that applicants for renewals would be given a 180-day extension of their EADs. See 81 Fed. Reg. 82398, 82401. Additionally, plaintiffs rely on the DHS's June 2020 amendment of 8 C.F.R. § 208.7, by which amendment it removed a requirement that renewal applications be submitted at least ninety days prior to the expiration date, see 85 Fed. Reg. 37509, and stated the 180-day extension "serve[d] the same purpose" as the provision it was removing, namely, to

"prevent[ ] gaps in work authorization," see id.

There appears to be no dispute that USCIS was able to adjudicate renewal applications within the 180-day extension period through almost all of the remaining months of 2020, until, in December 2020, the alleged delays began. (See Compl. ¶ 57 (alleging, "beginning in December 2020, [d]efendant USCIS began to take more than 180 days to adjudicate EAD renewals for many asylum applications").) Even in June 2020, however, the month in which renewal applicants were relieved of their prior obligation to file their renewal applications at least ninety days before the date of expiration, USCIS pointed out it was "advisable to submit the application earlier . . . to account for current Form I-765 processing times," see 85 Fed. Reg. at 37509,[2] and acknowledged that "cases may occasionally pend longer than 180 days due to unusual facts or circumstances," see id. at 37524.[3]

The usual process by which USCIS reviews renewal EAD applications is as follows. When renewal applicants submit their applications, the applications are "initially processed at a USCIS Lockbox facility," where employees review them[4] and "transmit accepted filings for processing and adjudication in USCIS's Electronic Immigration System," i.e., the "case management system" used by USCIS. (See Nolan Decl. ¶ 12.) Next, the USCIS case management system assigns each renewal application to a "specific service center based on the state of residence provided by the applicant and then parses it into a series of tasks, starting with pre-processing tasks" (see id. ¶ 14),

---

[2] Form I-765, titled Application for Employment Authorization, is the form used by aliens who seek an initial EAD, as well as by aliens who seek to renew an EAD.

[3] Although plaintiffs allege applicants relied on the June 2020 amendment and delayed filing a renewal application (see Compl. ¶ 54), neither Karen M. nor Dayana Vera de Aponte state she delayed filing her renewal application in light of the June 2020 amendment.

[4] In connection with such review, the employees "sort mail, scan application packages, enter data into systems, accept or reject filings based on applicable business rules, facilitate the collection and deposit of fees, return rejected filings, [and] forward original photos submitted with the application package to the appropriate office." (See Nolan Decl. ¶ 12.)

7

some of which tasks are completed electronically while others, in particular, those containing a discrepancy, require manual review, involving a variety of "pre-processing tasks," such as "identifying alternate names and/or date(s) of birth for background checks" (see id. ¶ 16). Once the pre-processing tasks have been completed, the application is placed in the service center's "'case review' work queue," at which point the application is ready to be "adjudicated by an officer." (See id.) The officers adjudicate the applications in the queue "based on date of filing"; specifically, the officers "determine if all eligibility criteria are met" and "make a decision, such as grant or deny, or issue a request for initial or additional evidence." (See id. ¶ 14.)

   Although, at the hearing, plaintiffs observed that USCIS has publicly stated it takes approximately twelve minutes for a USCIS officer to make a determination on the merits of an EAD application, the statement on which plaintiffs rely was made by USCIS in November 2019, see 84 Fed. Reg. 62280, 62292, prior to the circumstances, discussed below, giving rise to the adjudicatory delays that began at the end of 2020 (see, e.g., Nolan Decl. ¶ 23), and, even when made, did "not reflect the total processing time applicants . . . can expect to wait for a decision," see 84 Fed. Reg. at 62291.

   In their response to the instant motion, defendants have explained that unforeseen circumstances have arisen within the last year, with the result that USCIS's normal procedures have been significantly disrupted. In particular, beginning in March 2020, as a result of the COVID-19 pandemic, applicants were unable to obtain biometrics appointments due to the closure of Application Support Centers, where biometrics are taken, causing a "build-up of adjudicative backlogs" (see Nolan Decl. ¶ 18), and, additionally, there was a drop in "receipts and incoming fees," causing staffing shortages and ultimately the need to train new employees, who could not be hired until April 2021 (see id. ¶ 19). Further, there were delays caused by a "dramatic spike" in the number of EAD applications by asylum seekers in the Spring of 2021 (see id. ¶ 21), coupled with USCIS's need to "re-organize and reprioritize resources to favor [EAD] applications impacted by litigation" filed on behalf of categories of applicants other than asylum

8

seekers (see id. ¶ 20) and by an injunction that relieved some asylum seekers, specifically, "members of CASA [CASA de Maryland] and ASAP [Asylum Seeker Advocacy Project]," from the biometrics appointment requirement (see id. ¶ 23).[5]

In sum, although defendants' showing may not be enough to deny relief where a delay beyond the expiration of the 180-extension period is of a more significant length, in this instance, where the period of time in which Karen M. and Dayana Vera de Aponte have been waiting is just over one month, the Court finds the first factor weighs against granting a preliminary injunction.

### (2) Second Factor: Congressional Timetable

No statute or other congressional declaration sets forth "a timetable or other indication of the speed," see TRAC, 750 F.2d at 80, by which USCIS expects applications seeking renewal of EADs to be adjudicated. Although plaintiffs rely on 8 U.S.C. § 1571, which states "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing," see 8 U.S.C. § 1571(b), that statute is essentially "precatory" rather than mandatory in nature, see, e.g., Poursohi, 2021 WL 5331446, at *5-6. Moreover, § 1571 does not include applications for EADs, which are not "immigration benefit[s]," see 8 U.S.C. § 1572(2); 8 U.S.C. § 1571(b) (providing "nonimmigrant visa" as example of "immigration benefit"); see also 8 U.S.C. § 1158(d)(2) (providing "applicant for asylum is not entitled to employment authorization"), and, in any event, where § 1571 has been held applicable, courts have found delays of several years are not unreasonable, see, e.g., Poursohi, 2021 WL 5331446, at 5 (finding eighteen-month delay in adjudicating immigrant visa "does not by itself indicate an unreasonable

---

[5] At the hearing, counsel for plaintiffs stated Karen M. and Dayana Vera de Aponte are members of ASAP, suggesting they were not impacted by delays other applicants may have experienced in endeavoring to obtain biometrics appointments. The briefing submitted by the parties, however, includes no evidence that either Karen M. or Dayana Vera de Aponte is an ASAP member, and, even accepting counsel's representation as an accurate description of their membership status, there is no showing USCIS was made aware of that fact other than through the additional process in which USCIS officers now must engage to identify such applicants, which process itself adds to the time by which officers ordinarily would arrive at a final decision. (See id.)

9

1   delay"; citing cases finding "lengthier delays not to be unreasonable").

2   Accordingly, the Court finds the second factor weighs against granting a
3   preliminary injunction.

### (3) Third and Fifth Factors: Interest of Plaintiffs

The parties discuss the third and fifth factors together, as will the Court. See Independence Mining Co. v. Babbitt, 105 F.3d 502, 509 (9th Cir. 1997) (referring to third and fifth TRAC factors as "overlapping).

As noted, greater weight is afforded where the resulting harm is to health and welfare rather than to financial circumstances. Here, the harm identified by both Karen M. and Dayana Vera de Aponte is, at present, primarily economic loss. Each, however, has identified other harm that may occur if the period of delay were to extend in a significant manner. (See Karen M. Decl. ¶ 7 (citing possible inability to obtain disability leave); Vera de Aponte Decl. ¶¶ 11-12 (citing possible loss of Medicaid provider number necessary for work); id. ¶ 14 (citing possible loss of health insurance).)

Accordingly, the Court finds the third and fifth factors weigh in favor of granting a preliminary injunction.

### (4) Fourth Factor: Effect of Expediting Action on Agency

As noted, plaintiffs seek an order requiring USCIS to adjudicate their renewal applications with fourteen days of the issuance of an order granting a preliminary injunction.

As the D.C. Circuit has recognized, relief under the TRAC factors is inappropriate where, despite other TRAC factors weighing in favor of relief, "a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." See Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Although plaintiffs here attempt to avoid this concern by noting they seek injunctive relief on behalf of a class, even assuming class certification, the relief requested would move one category of aliens, namely, asylum seekers who have received a 180-day extension, over all other categories of aliens who have applied

1   for EADs.

2   Accordingly, the Court finds the fourth factor weighs against granting a preliminary
3   injunction.

### (5) Sixth Factor: Impropriety/Bad Faith

In the instant case, in contrast to cases in which the sixth factor has been found to favor injunctive relief, see, e.g., Brower v. Evans, 257 F.3d 1058, 1069 (9th Cir. 2001) (affirming district court's finding agency "unreasonably delayed" decision where agency failed to provide "valid excuse" for failure to act and "argue[d] unconvincingly" any delay was result of third-party's failure to cooperate, when, in fact, record established third-party's "enthusiasm and willingness to cooperate"), plaintiffs make no showing of intentional delay, or even that any delay is the result of negligence on the part of USCIS. Indeed, given the reasons for delay identified by USCIS, any delay appears to be outside of its control.

Accordingly, the Court finds the sixth factor either weighs against granting a preliminary injunction or, alternatively, is neutral.

### (6) Summary of TRAC Factors

On the present record, as set forth above, the first, and "most important," factor, see In re A Community Voice, 878 F.3d 779, 786 (9th Cir. 2017), as well as the second and fourth factors, weigh against granting a preliminary injunction, the third and fifth factors together weigh in favor of granting a preliminary injunction, and the sixth factor either weighs against granting a preliminary injunction or is neutral.

Under such circumstances, the Court finds plaintiffs have failed to show a clear likelihood of success on the merits.

### b. Remaining Preliminary Injunction Elements

In light of the above finding, the Court does not address herein the remaining elements bearing on entitlement to a preliminary injunction. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (holding where plaintiff has not shown likelihood of success on merits, court "need not consider the remaining three Winter elements")

(internal quotation, alteration, and citation omitted).

### c. Conclusion:  Motion for Preliminary Injunction

For the reasons set forth above, plaintiffs' motion for a preliminary injunction will be denied.

### 2. Class Certification

Plaintiffs seek to certify a class under Rule 23 of the Federal Rules of Civil Procedure.

Pursuant to Rule 23, members of a class may sue "as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  See Fed. R. Civ. P. 23(a).  Additionally, where the above prerequisites are satisfied, a class action may be maintained only if a sufficient showing is made under Rule 23(b).

Here, plaintiffs rely on Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  See Fed. R. Civ. P. 23(b(2).  "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011).  Stated otherwise, "the relief sought must perforce affect the entire class at once."  See id. at 361-62.

In the instant case, the Court, to determine the merits of plaintiffs' claims, as well as those of putative class members, must, as discussed above, balance the TRAC factors.  Of those factors, the third and fifth factors, namely, harm and prejudice, are subject to determination on an individual basis, and the first factor is, in part, namely, the length of delay, likewise subject to determination on such basis.  Although, in cases

where the other <u>TRAC</u> factors all weigh in favor of the relief requested, a showing of any amount of harm, prejudice, or delay might warrant issuance of an injunction applicable to the entire class, see, e.g., <u>Santillan v. Gonzales</u>, 388 F. Supp. 2d 1065, 1083-84 (N.D. Cal. 2005) (finding lawful permanent residents awaiting written documentation of their status entitled to classwide relief, where all class members experienced some harm from inability to work and all other <u>TRAC</u> factors weighed in favor of granting relief), here, as discussed above, such showing has not been made. Consequently, an individual evaluation would be necessary in order to determine if a class member is entitled to injunctive relief.

Accordingly, plaintiffs' motion for class certification will be denied.

## CONCLUSION

For the reasons stated, plaintiffs' Motion for Preliminary Injunction and Motion for Class Certification are hereby DENIED.

**IT IS SO ORDERED.**

Dated: December 22, 2021

MAXINE M. CHESNEY
United States District Judge